502 F.2d 411
 163 U.S.App.D.C. 409
 Alan F. NECKRITZ and Lawrence B. Ordower, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Westinghouse Broadcasting
Company, Inc., et al., Intervenors.
 No. 71-1392.
 United States Court of Appeals, District of Columbia Circuit.
 Argued April 23, 1973.
Decided June 28, 1974, Rehearing En Banc Denied Oct. 2, 1974.
 
 Alan F. Neckritz, pro se, Lawrence B. Ordower and Lewis J. Paper for petitioners.
 
 
 1
 John W. Pettit, Gen. Counsel, F.C.C., with whom Jcseph A. Marino, Associate Gen. Counsel, and R. Michael Senkowski, Counsel, F.C.C., were on the brief, for respondent, F.C.C.
 
 
 2
 J. Roger Wollenberg, Washington, d.c., with whom Timothy B. Dyk, David R. Anderson and Barry O. Chase, Washington, D.C., were on the brief for intervenor Columbia Broadcasting System, Inc., also argued on behalf of intervenors National Broadcasting Co., Inc., and American Broadcasting Co., Inc. Daniel Marcus, Washington, D.C., also entered an appearance for intervenor, Columbia Broadcasting System, Inc.
 
 
 3
 Lee Loevinger, Washington, D.C., with whom Raymond E. Vickery, Jr., Washington, D.C., was on the brief, for intervenor, Standard Oil Co. of Cal. Alfred F. Dougherty, Washington, D.c., also entered an appearance for intervenor, Standard Oil Co. of Cal.
 
 
 4
 Thomas E. Kauper, Asst. Atty. Gen., and Bruce B. Wilson, Deputy Asst. Atty. Gen., Dept. of Justice, were on the brief for respondent, United States. Howard E. Shapiro, Atty., Dept. of Justice, also entered an appearance for United States.
 
 
 5
 John D. Lane and J. Carter McKaig, Washington, D.C., were on the brief for intervenor Westinghouse Broadcasting Company, Inc. Ramsey L. Woodworth, Washington, D.C., also entered an appearance for intervenor Westinghouse Broadcasting Co., Inc.
 
 
 6
 Howard Monderer, Washington, D.C., was on the brief for intervenor National Broadcasting Co., Inc. Mathias E. Mone and Donald J. Mulvihill, Washington, D.C., also entered appearances for intervenor, National Broadcasting Co., Inc.
 
 
 7
 James A. McKenna, Jr., and Carl R. Ramey, Washington, D.C., were on the brief for intervenor American Broadcasting Co., Inc.
 
 
 8
 Thomas R. Asher and Tracy A. Westen, Washington, D.C., filed a brief on behalf of Council on Economic Priorities, et al., as amici curiae.
 
 
 9
 Geoffrey Cowan, Washington, D.C., and James W. Moorman, San Francisco, Cal., filed a brief on behalf of Friends of the Earth, et al., as amici curiae.
 
 
 10
 John E. Bryson filed a brief on behalf of Natural Resources Defense Council, et al., as amici curiae.
 
 
 11
 Robert Chartoff, Berkeley, Cal., filed a brief on behalf of Committee for Open Media as amicus curiae.
 
 
 12
 Before TAMM and ROBB, Circuit Judges, and DAVIES,* Senior United States District Judge for the District of North Dakota.
 
 ROBB, Circuit Judge:
 
 13
 This is a petition to review an order of the Federal Communications Commission which rejected a complaint filed by the petitioners against certain broadcasting licensees. The complaint alleged that the broadcasters had failed to fulfill their Fairness Doctrine obligations, growing out of advertisements for a particular brand of gasoline. The Commission rejected the complaint on the ground that the broadcasters had acted reasonably and in good faith in concluding that the advertisements did not raise a controversial issue of public importance. For the reasons hereinafter stated we affirm the Commission.
 
 I.
 
 14
 During 1970, five California television stations (KGO-TV, KPIX, KRON-TV, KNXT, and KNBC) carried advertisements for Standard Oil of California's Chevron gasoline with the new F-310 additive. These televised advertisements showed: (1) a large balloon attached to the exhaust pipe of a late model Chevrolet and turning black with exhaust fumes; (2) a car engulfed in a bag of black smoke; and (3) exhaust fumes ignited with a blow torch to indicate unburned gasoline going out the exhaust-- conditions which the advertisements maintained would be cured by 'just six tankfuls of Chevron with F-310.' The following script explained the pictures:
 
 
 15
 . . . I'm Scott Carpenter. We're attaching a clear balloon to this car to show you one of the most meaningful gasoline achievements in history. The balloon is filling with dirty exhaust emissions that go into the air and waste mileage. Now Standard Oil of California has accomplished the development of a remarkable gasoline additive, Formula F-310, that reduces exhaust emissions from dirty engines. The same car, after just six tankfuls of Chevron with F-310; no dirty smoke, cleaner air. A major breakthrough to help solve one of today's critical problems. And since dirty exhaust is wasted gasoline, F-310 keeps good mileage from going up in smoke. Cleaner air, better mileage-- Chevron with F-310 turns dirty smoke into good, clean mileage. There isn't a car on the road that shouldn't be using it.
 
 
 16
 In August of 1970, the petitioners, Neckritz and Ordower, complained to each of the five stations that the Chevron advertisements were misleading and deceptive, since the F-310 additive failed to live up to the advertising claims. The complaint asserted:
 
 
 17
 These ads seem designed to induce public complacency, and suggest that Cal-Standard is doing more to halt the pollution of our environment than the other oil companies. Chevron's 'black bag' commercials have been challenged as rigged. The California Air Resources Board in a recent study found no significant change in exhaust emissions when it fuelled its cars with F-310. The California Air Resources Board has forwarded its study to the Federal Trade Commission . . . for further investigation and disciplinary action. Cal-Standard, . . . used advertising which involved material deception as to the characteristics and performance of its products. 'We used a very low grade gasoline to dirty up the engine,' admits Eneas W. Kane, President of Chevron Research Co., the California plant that developed F-310. Standard officials conceded in testimony before the Hawaii State Senate Consumer Protection Committee that their advertising campaign is misleading because it neglects to point out that F-310 does nothing to reduce dangerous invisible exhaust emissions including airborne lead, nitrogen oxide and aldehydes.
 
 Neckritz and Ordower concluded that:
 
 18
 Cal-Standard by its ads raises one side of a controversial issue of public importance, and leaves the public with the impression that by the development of F-310 it is doing everything that is possible and necessary to remedy the car exhaust pollution problem. Cal-Standard's ads and claims for F-310 obfiscate the true hazards of this product, and hinder efforts aimed at educating the public about the dangers of auto pollution . . . (so) your network is obliged to present the other side of this issue. Cal-Standard by its own ads raised the ecology issue, and made ecological claims. Ads replying to Standard's ecological claims would be in the 'public interest' and would not undermine the present broadcast system based on product commercials.
 
 
 19
 The complaint did not otherwise specify or define the 'controversial issue of public importance' or the 'ecology issue' which the complainants professed to find in the advertisements. Nevertheless it was claimed that the 'issues raised by the Chevron F-310 commercials fall within the scope of' Banzhaf v. FCC, 132 U.S.App.D.C. 14, 405 F.2d 1082 (1968), cert. denied, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969), so that the presentation of 'the other side' was required.
 
 
 20
 Responding to the complaints four licensees took the position that the commercials did not argue a thesis which required the presentation of contrasting viewpoints under the Fairness Doctrine. Thus, KRON-TV said the commercials did not claim that F-310 did 'everything possible and necessary to remedy the exhaust pollution problem' and did 'not say that F-310 solves the problem but only that it is a significant step 'to help solve' this problem.' The commercials, said KRON-TV, did not deny the existence of air pollution by exhaust emissions or claim that F-310 did more than reduce such emissions; the only issue therefore was as to the truth or falsity of the claim that the product F-310 was effective.
 
 
 21
 Station KPIX concluded 'that the disagreement concerning the ecological advantages or shortcomings of the 'F-310' additives, is a facet of the issue of air and environmental pollution-- a 'controversial issue of public importance' to which KPIX has frequently addressed itself.' The station referred to a number of broadcasts by 'leaders in the anti-pollution field' which, in the judgment of the station, 'fulfilled its obligation under the Fairness Doctrine to inform the public on all significant aspects of the controversy over air pollution-- including the Chevron 'F-310' advertisement.' Also, the station noted that it had required the addition of these clarifying statements to the commercials:
 
 
 22
 Very dirty engine purposely used to provide severe test. Only dirty engines emit black smoke. Degree of improvement in your car depends on conditions of engine. Not all cars emit excessive exhaust. These qualifying statements were subsequently incorporated into the script for all stations.
 
 
 23
 Station KNXT also replied by noting that the Chevron F-310 advertisements were subject to a Federal Trade Commission investigation on charges of false and misleading advertising, and that a proposed order issued by the FTC would require corrective advertising.
 
 
 24
 Finally, all five licensees recognized that automobile pollution was a controversial issue of public importance in California, but they concluded that questions as to the efficacy of the Chevron F-310 product did not present such an issue. Each of the licensees maintained that its programming had devoted significant coverage to the many facets of the automobile pollution problem. The petitioners did not refute the licensees' contentions that the public had been and was being fully informed on the problem. In addition, Stations KRON, KGO-TV, KNXT, and KPIX stated that they had specifically covered the dispute about the efficacy of the F-310 product in their news broadcasts and other programs.
 
 The Commission's Original Ruling
 
 25
 After reviewing the pleadings, the Commission was unable to find any basis for reversing the licensees' determinations that the Chevron F-310 advertisements did not discuss a controversial issue of public importance, 29 F.C.C.2d 807. The Commission observed:
 
 
 26
 The Chevron F-310 announcements do not argue a position on a controversial issue of public importance, but rather advance a claim for product efficacy. It is true that this claim relates to a matter of public concern, but making such a claim for a product is not the same thing as arguing a position on a controversial issue of public importance. That the claim is alleged to be untrue or partially deceptive does not change its nature. The Chevron advertisements do not claim there is no danger in air pollution or that automobiles do not contribute to pollution but assert, instead, that use of the sponsor's product helps to solve the problem. It would ill suit the purposes of the fairness doctrine, designed to illumine significant controversial issues, to apply it to claims of a product's efficacy or social utility. The merits of any one gasoline, weight reducer, breakfast cereal or headache remedy-- to name but a few examples . . . do not rise to the level of a significant public issue.
 
 
 27
 Accordingly the Commission could find nothing unreasonable in the licensees' judgment that the advertisements did not raise Fairness Doctrine obligations.
 
 
 28
 The petitioners' reliance on the Banzhaf case in requesting counter-advertising time was rejected because 'we made clear that the unique situation there involved would not be extended to other product advertising.' This was because 'cigarette smoking was unique in regard to the hazard which results from normal use and also in regard to the simple issue presented-- whether or not to smoke.' Furthermore, the Commission noted that in a subsequent ruling it had refused to extend its cigarette ruling to advertisements urging the purchase of large displacement automobiles and high-test gasoline. Friends of the Earth, 24 F.C.C.2d 743, 748-49 (1970). Finally, the Commission announced its plan 'to initiate a proceeding of broad scope to consider every facet of our fairness doctrine and related public interest policies, including the vexing problem of access that has been on the periphery of many of our decisions in these areas.'[1]
 
 Pleadings Before the Commission on Remand
 
 29
 Petitioners sought review in this court following the Commission's ruling. While the case was pending, we reversed the Commission in Friends of the Earth v. FCC, 146 U.S.App.D.C. 88, 449 F.2d 1164 (1971). Since the licensees and the Commission had both relied in part on the ruling reversed by the court, the Commission requested that the record be remanded for reconsideration in light of our decision in Friends of the Earth. When the court granted the motion for remand, the Commission invited the parties[2] to comment on the effect, if any, of Friends of the Earth.
 
 
 30
 After the remand Standard Oil of California filed a Motion to Dismiss or, In the Alternative, to Make More Definite and Certain against petitioners' complaint. Standard Oil maintained that 'Complainants have never stated with any specificity or precision the controlversial issue which they allege raises a Fairness Doctrine question.' Neckritz and Ordower responded by stating only that the issue had been clarified during the course of the proceedings. In their later pleadings, however, they insisted that the Fairness Doctrine issue was 'a narrow one: do product commercials which claim that the use of a particular gasoline contributes to the solution of the air pollution problem trigger the fairness doctrine?'
 
 Neckritz and Ordower argued:
 
 31
 The facts underlying the court's decision in Friends of the Earth require that the Commission apply the fairness doctrine to the Chevron ads. Both that case and the instant controversy involve the same issue: does the use of a particular product pose health hazards which the ads failed to acknowledge.
 
 
 32
 They claimed also that the Chevron F-310 advertisements directly raised and discussed the controversial issue of air pollution:
 
 
 33
 Gasoline emissions from automobiles are a prime source of air pollution, which is a problem of public importance in California. Chevron F-310 commercials practically shout that they are dealing with this controversial issue of public importance.
 
 
 34
 However, petitioners insisted that they were not contending that the Fairness Doctrine applied to all gasoline commercials. Instead, they asserted only that 'the fairness doctrine applies when an advertisement explicitly claims that a product helps solve a pressing community problem or when the advertisement ignores the adverse consequences which the use of that product has for a pressing community problem.'[3] They repeated their demand for 'counter advertising.'
 
 The Commission Ruling on Remand
 
 35
 In its ruling, 37 F.C.C.2d 528, the Commission first noted that 'originally, our application of the Fairness Doctrine to product advertising was intended to be limited to a single product'-- cigarettes. Cigarettes were thought to involve a unique problem 'since smoking them is a habit 'which can fade away' without impact upon other aspects of life, and which official voices have urged the public to avoid or abandon.' However, said the Commission, in the Friends of the Earth case the court could not 'plausibly differentiate' cigarette advertisements from commercials promoting large-engine cars and hightest gasoline. 'The Court found 'undisputed evidence' that these products, like cigarettes, significantly enlarged and aggravated existing public health hazards.' Furthermore, public officials had encouraged the public not to use such products.
 
 
 36
 Since there was 'no evidence which would indicate that the Chevron additive F-310 in any way enlarges or aggravates hazards to the public health,' the Commission found the present case distinguishable from Friends of the Earth:
 
 
 37
 Chevron with F-310 is not alleged to be more dangerous than any competing product. Petitioners do not urge the public to abandon the use of gasoline, or even to avoid using Chevron with F-310. It is clear, therefore, that the broadcast of contrasting views in the present case would not provide a health service similar to exhortations to stop smoking, or to drive cars with reduced horsepower and use gasolines with a low-octane rating.
 
 
 38
 In fact, the Commission pointed out, Chevron had 'amassed considerable evidence to support the proposition that its product will . . . contribute to a reduction of the air pollution problem.' Under such circumstances the Commission could not say with certainty that broadcast of a contrasting view would provide a valuable public health service.
 
 
 39
 Aside from the public health factors underlying the Friends of the Earth decision, the Commission remained convinced that traditional Fairness Doctrine principles did not require the broadcasting of contrasting views with respect to Chevron F-310. The Commission could find nothing unreasonable in the licensees' conclusions that these advertisements 'did not argue a position on a controversial issue of public importance, but merely advanced a claim for product efficacy.' As the Commission emphasized, the critical consideration was that:
 
 
 40
 . . . the licensee, in applying the fairness doctrine, is called upon to make reasonable judgments in good faith on the facts of each situation-- as to whether a controversial issue of public importance is involved . . .. In passing on any complaint in this area, the Commission's role is not to substitute its judgment for that of the licensee . . . but rather to determine whether the licensee can be said to have acted reasonably and in good faith.
 
 
 41
 Here the Commission was unable to find that the licensees had acted unreasonably or in bad faith in determining that the Chevron F-310 ads did not constitute a discussion of a controversial issue of public importance.
 
 
 42
 With respect to the demand for counter advertising the Commission pointed to its review of the Fairness Doctrine, then going on:
 
 
 43
 This study includes a detailed analysis of the merits of various 'counter advertising' proposals, including suggestions similar to those advanced by the Petitioners in this case. At the end of this study, we hope to be in a position to balance more intelligently likely gains to public enlightenment against the threats these gains may present to the economic base and sound administration of the commercial broadcasting system. In the meantime, we are convinced that our present policy is the one best designed to further '. . . the larger and more effective use of radio in the public interest.' (Quoting 47 U.S.C. 303(g).)
 
 II.
 
 44
 As we have said, the petitioners in the administrative proceedings did not clearly articulate the controversial issue of public importance that they wished to discuss. In their brief in this court they have undertaken to remedy this deficiency. Thus they say:
 
 
 45
 . . . the ads totally ignore the evidence that use of most gasolines, Chevron F-310 included, actually contributes to the air pollution problem. Accordingly, the Commission's decision that ads for Chevron F-310 do not raise a controversial issue of public importance will leave the California public uninformed about the other side of this critical debate. (Br. 29.) The ads ignore totally the fact that Chevron F-310 is a leaded gasoline, the very kind that was subject to the fairness doctrine complaint in Friends of the Earth; and the ads also ignore totally the fact that, even if the gasoline does have some benefit in reducing automotive pollutants, use of this gasoline will still contribute to the air pollution problem. (Br. 37.) To begin with, the same undisputed evidence referred to in Friends of the Earth v. F.C.C. applies to Chevron F-310 gasoline since this gasoline, like the gasoline referred to in Friends of the Earth v. F.C.C. is a leaded gasoline. (Br. 40.) First, the issue explicitly raised by the ads is whether use of Chevron F-310, or any leaded gasoline which aggravates the air pollution problem, can contribute significantly to the solution of California's air pollution problem. (Br. 46.) Failing to apply the fairness doctrine to the Chevron ads, the F.C.C. is depriving the California public of information relating to an important public question: whether use of Chevron F-310, or any leaded gasoline, can contribute significantly to the solution of California's air pollution problem. (Br. 52.)
 
 
 46
 Briefly stated, the petitioners' argument in their brief is that advertisements for a leaded gasoline raise a controversial issue of public importance. This is a theme sounded for the first time on appeal, for in the administrative proceedings the petitioners did not base their complaint upon the presence of lead in Chevron gasoline with F-310. Consideration of this new argument is therefore precluded by section 405 of the Communications Act, 47 U.S.C. 405. Neckritz v. FCC, 446 F.2d 501 (9th Cir. 1971).
 
 
 47
 Although the petitioners' attempts to discover or create a controversial issue of public importance either come too late or fall short of clarity we shall discuss their contentions in the light of the principles of the Fairness Doctrine and the decisions of this court in the Banzhaf and Friends of the Earth cases.
 
 
 48
 The principles of the Fairness Doctrine have been expounded by the Commission and courts in many cases and we need not review them here. See Red Lion Broadcasting Co., Inc. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); Democratic National Committee v. FCC, 148 U.S.App.D.C. 383, 460 F.2d 891, cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972); Healey v. FCC, 148 U.S.App.D.C. 409, 460 F.2d 917 (1972); Green v. FCC,144 U.S.App.D.C. 353, 447 F.2d 323 (1971). It is enough to say that under the doctrine wide discretion is available to a licensee; to establish a violation of the doctrine a complainant must demonstrate that the licensees' exercise of judgment was unreasonable, arbitrary or in bad faith.
 
 
 49
 We think the record supports the Commission's conclusion that the licensees exercised a reasonable judgment in rejecting the petitioners' complaint. As originally formulated the complaint failed to specify the ecological issue or issues which the petitioners found in the gasoline advertisements. In this situation the licensees could reasonably believe that the issue the petitioners wished to discuss was whether Chevron F-310 did what the advertisements claimed it would do. From this premise it was not unreasonable to conclude that the commercials did not raise a controversial issue of public importance, but rather made claims of a factual nature which the petitioners contended were false. In other words, the narrow question of the efficacy of F-310 was not a controversial issue of public importance.
 
 
 50
 The charge that the advertised claims for F-310 were false was not a matter properly to be tried on television by advertisement and counter-advertisement. Rather, as the licensees observed, it was a proper subject for a Federal Trade Commission investigation. That investigation did take place. In the Matter of Standard Oil Co. of Calif., et al., Federal Trade Commission, Docket No. 8827. On April 25, 1973 the Administrative Law Judge in that proceeding found that the evidence sustained the advertising claims and dismissed the charges that the advertising was false.[4] We note further that the petitioners in their brief state that they 'are not asking this court to review the FCC decision to deny relief with respect to the deceptive advertising issue.' (Br. 27, n.1.)
 
 
 51
 Even if the petitioners' argument based upon the presence of lead in Chevron gasoline with F-310 were properly before us it would be unpersuasive. In the first place, the record discloses without dispute that Chevron marketed unleaded gasoline with F-310 before the petitioners' complaint was filed. Moreover the Chevron advertisements did not proclaim the virtues of leaded gasoline.
 
 
 52
 This case is not controlled by Banzhaf v. FCC, 132 U.S.App.D.C. 14, 405 F.2d 1082 (1968), cert. denied, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969), and Friends of the Earth v. FCC, 146 U.S.App.D.C. 88, 449 F.2d 1164 (1971). In the Banzhaf case advertisements represented that smoking was socially desirable, although evidence indicated that it was dangerous to health. In the Friends of the Earth case the burden of the advertising was that high-test gasolines and large engines were 'clean, socially responsible and automotively necessary', although such engines and gasolines contributed significantly to air pollution. In each case there was an opposing point of view: that smokers should stop smoking or that consumers should purchase low-test gasolines and small engines. In the case at bar however the commercials made no attempt to glorify conduct or products which endangered public health or contributed to pollution. As we noted in the Friends of the Earth decision the F-310 commercials 'far from suggesting that automobile emissions do not contribute significantly to the dangers of air pollution, urged that the gasoline being advertised was designed to reduce those dangers.' 146 U.S.App.D.C. at 93, 449 F.2d at 1169.
 
 
 53
 In summary, we agree with the Commission's analysis and disposition of the petitioners' complaint.
 
 
 54
 Affirmed.
 
 
 55
 Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB, and WILKEY, Circuit Judges.
 
 ORDER
 
 56
 PER CURIAM.
 
 
 57
 On consideration of petitioners' suggestion for rehearing en banc, it is
 
 
 58
 Ordered by the Court en banc that petitioners' aforesaid suggestion is denied.
 
 
 59
 Statement of Chief Judge BAZELON as to why he voted to deny rehearing en banc:
 
 
 60
 Upon consideration of petitioners' suggestion for rehearing en banc, and the respondent's response thereto ordered by the Court, I am convinced that the case does not merit rehearing en banc for two related reasons, First, and most important, the response reveals that since the decision by the panel in this case the FCC has issued a new statement of policy concerning the Fairness Doctrine and advertising, 39 Fed.Reg. 26372 (July 12, 1974), and that review of such statement is currently being sought in this Court in No. 74-1700. I believe that review is the proper vehicle to consider in the first instance the serious issues raised in petitioners' suggestion for rehearing en banc. Second, the advertising messages which are the subject of this litigation have been terminated. Brief for the FCC at 12 n.4, Neckritz v. FCC, No. 71-1392 (D.C. Cir. June 28, 1974). The extraordinary process of rehearing en banc is thus not appropriate in this case.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 292(d)
 
 
 [1]
 See Fairness Doctrine Inquiry in Docket 19260, 30 F.C.C.2d 26 (1971). The matter is still pending before the Commission
 
 
 [2]
 Apparently because KRON had not intervened before this court it was not served with a copy of the Commission's letter of inquiry
 
 
 [3]
 Petitioners also urged that the importance of the controversy over Chevron F-310 was further suggested 'by the fact that the licensees and Standard Oil of California have devoted considerable attention to petitioners' complaint. The licensees have taken note of the controversy on news programs, including the prestigious and widely viewed 'CBS Evening News with Walter Cronkite." In addition, 'Standard Oil discontinued the contested ads and now airs ads which do not explicitly exploit community concern about the problem of air pollution.' The disputed commercials went off the air in the fall of 1971
 
 
 [4]
 The matter is pending on appeal before the Federal Trade Commission